# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| JANET PERDUE, ) | |
| ) | |
| Plaintiff, ) | **COMPLAINT AND DEMAND** |
| ) | **FOR TRIAL BY JURY** |
| v. ) | |
| ) | **CIVIL ACTION NO. 1:18-cv-0221** |
| SANOFI – AVENTIS US, LLC ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Janet Perdue ("Plaintiff" or "Perdue"), by and through counsel, hereby brings this action against Defendant Sanofi US ("Defendant") for violations of the Americans with Disabilities Act of 1990, 42 U.S.C §§ 12101 *et seq.* ("ADA") and Wrongful Discharge in Violation of North Carolina Public Policy, and alleges the following:

## THE PARTIES

1. Perdue is a resident of Greenville, Greenville County, South Carolina.

2. Defendant Sanofi US ("Defendant") is a multinational New Jersey corporation headquartered in Bridgewater, New Jersey

## JURISDICTION AND VENUE

3. This Court has original jurisdiction under 28 U.S.C. § 1331 over the Plaintiff's claims under the ADA, 42 U.S.C §§ 12101 *et seq.* because the claims arise under the laws of the United States.

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in Buncombe County, Asheville, North Carolina, which is located within this judicial district.

5. Venue is proper in this judicial district because Defendant has substantial business contacts in this district, and because the unlawful acts alleged herein occurred substantially in Buncombe County, Asheville, North Carolina.

6. At all relevant times, Defendant was an "employer" as defined by the ADA, 42 U.S.C §§ 12101 *et seq*.

7. At all relevant times, Perdue was an employee as defined by the ADA, 42 U.S.C §§ 12101 *et seq*.

8. Plaintiff has exhausted all administrative remedies available to her prior to filing this lawsuit.

## FACTUAL ALLEGATIONS

9. Defendant operates a multinational pharmaceutical company with locations all around the country, including Asheville, North Carolina.

10. Plaintiff began working for Defendant in November of 2001 and most recently held the position of Executive Sales Representative.

11. Plaintiff achieved significant sales goals throughout her career with Defendant and has never had any performance issues.

12. In February 2013, Plaintiff was placed on medical leave due to inflammation of her lungs, joints, and muscles, and a severe decrease in her ability to breath.

2

13. In April 2013, Plaintiff was diagnosed with an autoimmune disorder called Antisynthetase Syndrome.

14. Plaintiff's autoimmune disorder worsened, and the increased inflammation on her muscles caused her to lose the ability to walk and become wheelchair dependent. At this time, Plaintiff was receiving in-home physical therapy.

15. In June 2013, Plaintiff lost complete sight in her left eye.

16. In July 2013, Plaintiff was sent to a Neuro-opthamologist, who took an MRI and discovered a large tumor in Plaintiff's head that was wrapped around her left optic nerve.

17. The Neuro-opthamologist recommended the tumor be removed, and Plaintiff had major head surgery to remove the tumor in August 2013.

18. For the next four months, Plaintiff fought back through intense rehabilitation with medical support teams, and eventually, her left eye eyesight and ability to walk and breathe returned.

19. Defendant is and was well aware of Plaintiff's disability as she was on short and long-term disability from February 2013 until December 2013, because of her autoimmune disorder.

20. In December 2013, Plaintiff returned to work with Defendant on a 50% flex-time schedule.

21. Over the next several years, Plaintiff worked diligently and intensely with her medical support team and was able to increase to a full-time work schedule in late 2015.

22. Plaintiff continued working for Defendant full-time without any accommodation from 2015 until January 2017.

23. In January 2017, Defendant restructured its sales organization and assigned Plaintiff to the Asheville, North Carolina territory.

24. Defendant did not offer Plaintiff an opportunity to relocate to Asheville and instead required her to travel from Greenville, South Carolina to Asheville, North Carolina and other cities in Western North Carolina to work.

25. Despite her known disability, Plaintiff had been able to perform all of the essential functions of her job without any accommodations.

26. Due to the amount of driving and extensive travel from Greenville, South Carolina to Asheville, North Carolina, Plaintiff's health began to deteriorate.

27. Plaintiff's medical care providers advised that she needed to reduce the amount of travel she was now required to do because of the job realignment.

28. Plaintiff immediately began looking for opportunities with Defendant to return to the Greenville, South Carolina market so that she would not have to drive so far everyday and to improve her health.

29. In March of 2017, Plaintiff discovered an open sales position with a job share opportunity in Greenville, South Carolina with a job share partner, Caitlyn Brunson Hunt.

30. Plaintiff, along with Ms. Hunt, contacted Defendant to confirm that they still offered job share opportunities.

4

31. Plaintiff and Ms. Hunt were informed by Defendant that the position in Greenville was still open and available for job sharing pending manager approval.

32. Plaintiff and Ms. Hunt submitted a job share request to Defendant.

33. Plaintiff made it clear to Defendant that she needed the job share opportunity as an accommodation because of her disability and the toll that traveling from Greenville to Asheville everyday was taking on her health.

34. Given Plaintiff's extensive experience and success with Defendants, Plaintiff was clearly the most qualified candidate for this open sales position.

35. Upon information and belief, Ms. Hunt was also qualified for this position and had received excellent performance reviews with Defendant.

36. In May 2017, without explanation, Defendant denied Plaintiff's request for the job share approval with Ms. Hunt for the position in Greenville, South Carolina.

37. Upon information and belief, Defendant denied Plaintiff's request because of her known disability.

38. Plaintiff requested a reason for the denial to be made in writing, which Defendant refused to provide.

39. Despite clearly seeking a reasonable accommodation, Defendant refused to engage in the interactive process with Plaintiff.

40. As a result of the required travel and Defendant's unlawful discrimination in its denial of the job share opportunity in Greenville, South Carolina, Plaintiff's health continued to deteriorate.

5

Case 1:18-cv-00221-MR-WCM    Document 1    Filed 08/06/18    Page 5 of 10

41. Plaintiff was forced to go on short-term disability because she could not travel every day or every week to Asheville.

42. In September 2017, Plaintiff's short-term disability ended.

43. Plaintiff informed Defendant that her health condition and doctors would not permit her to travel back and forth from Greenville, South Carolina to Asheville, and once again inquired again about opportunities in Greenville, South Carolina or anywhere closer to her home.

44. Defendant told Plaintiff she had to return to her job in Asheville, North Carolina or she was going to be terminated.

45. On September 19, 2017, after sixteen years of dedicated service, Defendant terminated Plaintiff without any attempt to accommodate her known disability.

## COUNT I
### (*Violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et seq*.)

46. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

47. Plaintiff is a "person" and an "employee", and Defendant is an "employer" and "covered entity" as those terms are defined by 42 U.S.C. § 12111.

48. Plaintiff has a "disability" as that term is defined at 42. U.S.C. § 12102 in that she has physical impairments that limited one or more of her major life activities.

49. Defendant otherwise perceived Plaintiff as disabled at the time of her termination and in the lead up to Plaintiff's termination.

50. Plaintiff's performance met and/or exceeded any reasonable expectations of Defendant's for her role.

51. Plaintiff was qualified for her position and could perform the essential functions of her job at all relevant times, with or without a reasonable accommodation.

52. Plaintiff requested reassignment back to Greenville, South Carolina would have allowed her to manage her health condition and return to work.

53. With the requested accommodation, Plaintiff would have been able to perform all of the essential functions of her job.

54. Plaintiff suffered an adverse employment action when the Defendant terminated her employment on September 19, 2017, after she requested reassignment.

55. Defendant violated the Americans with Disabilities Act ("ADA") by (a) treating Plaintiff differently from her peers in the terms and conditions of her employment and ultimately terminating her employment; (b) failing to engage in the interactive process such that it then failed to accommodate her disability or perceived disability; and (c) ultimately terminating her employment. Defendant committed a gross dereliction of its duty to engage in the interactive process with Plaintiff, resulting in a failure to accommodate.

56. Defendant further violated the ADA by retaliating against Plaintiff for exercising her statutory right to request a reasonable accommodation. That is, Plaintiff requested a reasonable accommodation – e.g., requesting reassignment to a job that was posted as available – and Defendant retaliated against her by terminating her employment. Plaintiff's request qualifies as a reasonable accommodation under the ADA.

57. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical

7

distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

58. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## COUNT II
### (*Wrongful Discharge in Violation of North Carolina Public Policy*)

59. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

60. Plaintiff was an at-will employee.

61. Defendant employed at least fifteen (15) employees at all relevant times.

62. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2.(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of disability or "handicap," sex, and race, among other protected categories.

63. Defendant violated this public policy by refusing to return Plaintiff to work on the basis of her disability (or "handicap").

8

64. The public policy of the State of North Carolina as set forth in the N.C.G.S. § 168A *et seq.,* North Carolina's Persons with Disabilities Protection Act, also prohibits employers from discriminating against employees on the basis of their disability.

65. Plaintiff qualified as an individual with a disability because she suffered a serious health condition – an autoimmune disorder called Antisynthetase Syndrom- affecting her ability to do her job without an accommodation.

66. Defendant violated North Carolina public policy by terminating Plaintiff because of her actual or perceived disability and/or handicap. Specifically, Defendant refused to allow Plaintiff the opportunity to participate in a job share opportunity for an open position closer to her home and Plaintiff was unable to return to work without any accommodation. This employer conduct has the tendency to be injurious to the public policy of North Carolina and is against the public good.

67. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

68. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

(1) A judgment awarding Plaintiff reinstatement, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violations of the Americans with Disabilities Act 42 U.S.C § 12101 *et. seq.*;

(2) An Order awarding Plaintiff reasonable attorneys' fees;

(3) Pre-judgment and post-judgment interest calculated at the prevailing legal rate; and

(4) An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury in this action for all issues of fact.

*/s/ L. Michelle Gessner*
L. Michelle Gessner
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Telephone: (704) 234-7442
Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com